**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RIMKUS CONSULTING GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-0405 |
| | § | |
| NICKIE G. CAMMARATA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Plaintiff Rimkus Consulting Group, Inc. sued its former employee, Nickie G. Cammarata. Rimkus seeks to enforce an eighteen-month noncompetition provision in an employment agreement Cammarata signed. Rimkus is a Texas company with an office in Louisiana, where Cammarata lived and worked. Cammarata has moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure or, alternatively, to dismiss or transfer to the Eastern District of Louisiana. (Docket Entry No. 5). Rimkus has filed a response, (Docket Entry No. 15), and Cammarata has replied, (Docket Entry No. 17). Based on a careful review of the pleadings, the motion, response, and reply, the record, and the applicable law, this court denies the motion to dismiss and the motion to transfer. The reasons are set out below.

**I.     Background**

Rimkus Consulting Group, Inc. is a Texas company with its principal place of business in Houston, Texas. Rimkus's primary business is to provide investigative and

forensic engineering services for use in analyzing property damage and loss from storms, fires, industrial accidents, and construction defects.  Rimkus also does vehicle accident reconstruction work.  In October 1996, Rimkus hired Cammarata as a full-time salaried employee to provide forensic engineering services.  Cammarata signed an "Employment Agreement Salaried Employee."  The Agreement states that Cammarata will not work in competition with Rimkus for eighteen months after his employment ends.

Cammarata resigned from Rimkus on November 15, 2006 and went to work for U.S. Forensic, L.L.C., a company that also provides forensic engineering services to determine the cause, origin, and extent of losses from failures and accidents.  On the date he resigned from Rimkus, Cammarata sued Rimkus in Louisiana state court, seeking a declaratory judgment that the noncompete was unenforceable.  In January 2007, Rimkus filed this suit against Cammarata, alleging that he had violated the noncompete agreement, had solicited business from Rimkus clients, and had misappropriated Rimkus's trade secrets by helping form U.S. Forensic while still working for Rimkus and by leaving Rimkus to work for U.S. Forensic.  Rimkus seeks to enjoin Cammarata from continuing to work in competition with Rimkus and soliciting Rimkus employees and customers, as well as damages.

Cammarata has submitted evidence showing that he was a resident and citizen of Louisiana who worked for ten years for Rimkus in its Louisiana office.  Cammarata's declaration states that he does not maintain a registered agent in Texas; does not own property in Texas; does not maintain an office or financial accounts in Texas; does not have a place of business in Texas; has no agents or employees in Texas; and has no mailing

2

address or telephone listing in Texas.  (Docket Entry No. 6, Ex. 1).  Rimkus responds with evidence of Cammarata's Texas contacts, including that he traveled from Louisiana to Houston to be interviewed before he was hired; signed the Employment Agreement in Texas; attended orientation and training classes in Texas; taught training classes in Texas; had frequent communications with the Texas office about his work for Rimkus; and worked on "Houston projects" and on other projects "in connection with the Houston office."  (Docket Entry No. 15 at 2–3).

Cammarata has moved to dismiss, arguing that this court lacks personal jurisdiction because he does not have minimum contacts with Texas and because venue is improper in Texas.  (Docket Entry No. 5).  Alternatively, Cammarata moves to transfer venue to the Eastern District of Louisiana, for the convenience of the witnesses and parties and in the interests of justice.  28 U.S.C. § 1404(a).

Although Cammarata asserts that Rimkus has provided inadequate proof of the relevant facts, most of those facts appear to be undisputed.  Rimkus is a Texas company with a Louisiana office.  Rimkus hired Cammarata to work in the company's Louisiana office. Cammarata is a Louisiana citizen.  He came to Houston to be interviewed; signed the Employment Agreement in Houston; and had regular work-related contacts and communications with the Houston office but performed his work primarily in Louisiana.

The noncompete provision stated as follows:

> (a)  Employee will not, directly or indirectly, own, manage, finance, control, or participate in the ownership, financing, or control of, or be connected as a partner,

3

principal, agent, employee, independent contractor, management advisor, and/or management consultant with, or use or permit his name or resume to be used in connection with any business or enterprise performing consulting services similar to those which are carried on by the Company in the "Designated Geographic Area." For the purposes of this Agreement "Designated Geographic Area" shall mean any standard metropolitan statistical area (or if a client is not located in a standard metropolitan statistical area, then the city, town, or township in which such client is located and the counties or parishes contiguous thereto) in which a client or clients of the Company are located and from which such client or clients have engaged Company on not less than five (5) separate files or engagements during the five (5) calendar years proceeding termination of Employee's employment with Company.  If Company has received less than five (5) such assignments or engagements from a client in any Designated Geographic Area, then Employee shall be free to compete in such Designated Geographic Area.  "Client" shall mean any person or entity represented by the Company on an assignment or engagement, and shall include, but not be limited to, an owner, an operating entity, an insurance company, and independent adjustment firm, a governmental agency, [or] a law firm.  Employee further agrees that during the effective period of this Agreement and this covenant, he will not do any act which is intended, or reasonably expected, to have a detrimental effect on the business of the Company.  This covenant against competition shall be construed as a separate covenant covering competition within the State of Texas, or in any other State where the Company, directly or indirectly, whether through itself or its representative or agents, conducts business;

(b)     Employee agrees that after termination of employment with the Company, he will not, directly or indirectly, solicit, employ, or in any other fashion, hire persons who are, or were, employees, officers, or agents of the Company, until such person has terminated his

4

> employment with the Company for a period of eighteen
> (18) months;
>
> (c)     Employee agrees, that for a period lasting until eighteen
> (18) months after termination of his employment, he will
> not at any time, directly or indirectly, solicit the
> Company's customers.

(Docket Entry No. 1, Ex. A at 4–5).

Louisiana law makes noncompete agreements unenforceable.  LA. REV. STAT.
§ 23:921(A)(1).  Texas law limits noncompete agreements but does not invalidate them.
TEX. BUS. & COM. CODE § 15.50(a); *see also Alex Shushenoff Mgmt. Servs., L.P. v. Johnson*,
209 S.W.3d 644 (Tex. 2006).  The Employment Agreement Cammarata signed addressed
both choice-of-law and forum.  The relevant provision stated:

> **Place of Performance; Governing Law**.  This Agreement is
> executed in Houston, Harris County, Texas.   Further, any
> dispute or other proceeding to enforce the terms of this
> Agreement shall be adjudicated by a court of competent
> jurisdiction in Harris County, Texas.  This Agreement and all
> rights, obligations, and liabilities arising hereunder shall be
> governed by, and construed and enforced in accordance with the
> laws of the State of Texas (excluding its conflicts of law
> provisions) applicable to contracts made and to be performed
> therein.

(Docket Entry No. 1, Ex. A at 11).

Both jurisdiction and venue are analyzed below.

5

## II.      The Motion to Dismiss

### A.      The Applicable Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the U.S. Constitution. *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); TEX. CIV. PRAC. & REM. CODE §§ 17.041–17.045.

The due process inquiry focuses on whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "There must be some act whereby the [nonresident] defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.*

6

A plaintiff bears the burden of demonstrating facts sufficient to support personal jurisdiction over a nonresident defendant. That burden is met by a *prima facie* showing; proof by a preponderance of the evidence is not necessary. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell*, 317 F.3d at 469. "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001). The "plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *Hartford Fire Ins. Co. v. Hutchinson*, No. 05-cv-2078, 2006 WL 903715, at *2 (S.D. Tex. Apr. 6, 2006) ("A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction.").

Minimum contacts can be established through "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson v.*

*Belin*, 20 F.3d 644, 647 (5th Cir. 1994).  A court may exercise specific jurisdiction when: (1) the nonresident defendant purposely availed itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state.  *Freudensprung v. Offshore Tech. Serv.*, 379 F.3d 327 (5th Cir. 2004) (citations omitted); *Liebreich*, 339 F.3d at 375; *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002); *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 446 U.S. 408, 414 n.8 (1984)).  To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice."  *Gundle Lining Constr.*, 85 F.3d at 205.  "The nonresident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction.  *Helicopteros*, 466 U.S. at 414–15; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).  The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those

8

needed to support specific jurisdiction. *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir. 1990) (citations omitted).  "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'"  *Holt Oil & Gas v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985)); *see also Freudensprung*, 379 F.3d at 343.

### B.    Analysis

Cammarata makes two arguments against the exercise of personal jurisdiction by this court.  First, he argues that he lacks minimum contacts with Texas.  Second, he argues that an exercise of jurisdiction over him would be unfair.  Each argument is addressed in turn.

#### 1.    *Minimum Contacts*

Rimkus relies on the choice-of-law and forum-selection clauses in the Employment Agreement.  Cammarata responds that the clauses are unenforceable because they are unreasonable and would deprive him of a remedy under Louisiana law and contravene Louisiana public policy that invalidates noncompete agreements.  Rimkus responds that the clauses provide ample basis for finding that Cammarata consented to jurisdiction in Texas.

As part of the minimum contacts analysis, a court evaluates any contracts, the parties' "actual course of dealing," and the parties' "prior negotiations and contemplated future consequences."  *Burger King*, 471 U.S. at 479.  The Employment Agreement the parties signed stated that any dispute or "other proceeding to enforce" the Agreement "shall be adjudicated by a court of competent jurisdiction in Harris County, Texas."  (Docket Entry

9

No. 1, Ex. A at 11).  The Agreement also states that Texas law governs.  The Agreement contains both a choice-of-law clause and a mandatory—not permissive—forum-selection clause.  *See Burger King*, 471 U.S. at 481–82 (distinguishing a choice-of-law analysis from a minimum contacts analysis, and noting that selecting the law of a specific state "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

"A forum-selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable."  *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004).   A forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching in creating the clause, enforce such consent.  *See Kevlin*, 46 F.3d at 15.

In *M/S Bremen v. Zapata Off-Shore*, 407 U.S. 1, 11 (1972), the Supreme Court held that forum-selection clauses in admiralty cases are presumptively valid and enforceable, noting that international cases raise significant uncertainty regarding the resolution of disputes because of the obvious fact that ocean-going vessels travel through many jurisdictions.  "The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting."  *Zapata Offshore*, 407 U.S. at 13–14.  To overcome the presumption that a forum-selection clause is enforceable, the party challenging such a clause must make a

"strong showing" that the clause is unreasonable.  *Id*. at 15.  Justice Kennedy summarized the strong presumption in favor of the enforceability of forum-selection clauses as follows: "a valid forum-selection clause is given controlling weight in all but the most exceptional cases."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

The Supreme Court refined its analysis of forum-selection clauses in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).  A passenger aboard a Carnival Cruise Lines ship filed a negligence suit in the state of Washington.  The ticket authorizing passage aboard the ship contained a clause requiring all disputed cases to be filed in the state of Florida. Carnival Cruise Lines asserted the forum-selection clause as a defense.  The passenger attacked the clause because it was not the product of negotiation and tended to deprive the passenger of her day in court.  *Id*. at 590.  The Court rejected these arguments.  Even though the passenger did not and could not bargain for this forum-selection clause due to a lack of bargaining power, the Court held that forum-selection clauses in routine contracts of passage are enforceable so long as they are reasonable.  This type of clause is "subject to judicial scrutiny for fundamental fairness."  *Id*. at 595.  This clause limited Carnival Cruise Lines exposure to suits in multiple forums, eliminated passengers' confusion about where to file suit against Carnival Cruise Lines, and tended to reduce ticket prices.  The Court found the clause reasonable and enforceable.  *Id.*

Recent cases make it clear that a mandatory forum-selection clause is valid unless the defendant shows that it is unreasonable.  *See, e.g.*, *Haynsworth v. The Corporation*, 121 F.3d 956, 962–63 (5th Cir. 1997); *Int'l Software Sys., Inc. v. Amplicon*, 77 F.3d 112, 114–15 (5th

11

Cir. 1996); *Canvas Records, Inc. v. Koch Entm't Distribution, LLC*, No. 07-cv-0373, 2007 WL 1239243, at *4 (S.D. Tex. Apr. 27, 2007); *Top Branch Tree Serv. & Landscaping v. Omni Pinnacle, LLC*, No. 06-cv-3723, 2007 WL 1234976, at *1 (E.D. La. Apr. 26, 2007); *Nayani v. Horseshoe Entm't*, No. 06-cv-1540, 2007 WL 1062561, at *6 (N.D. Tex. Apr. 10, 2007).

Cammarata has not met his substantial burden of rebutting the presumptive validity of the forum-selection clause.  The Supreme Court has held that if the forum-selection clause is reasonable, the fact that it involves inconvenience and expense does not make it unenforceable.  *Carnival Cruise Lines*, 499 U.S. at 590.  This court finds that the forum-selection clause at issue is reasonable and enforceable.

The record also shows other grounds for finding that Cammarata had minimum contacts with Texas.  It is true that merely entering a contract with a resident is not sufficient to create jurisdiction over the nonresident defendant.  *Freudensprung*, 379 F.3d at 344; *Harvey*, 801 F.2d at 778; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).  A court must examine the nature and extent of the contractual relationship as well as its formation, to determine whether personal jurisdiction is appropriate.  *Stuart*, 772 F.2d at 1194 ("[T]he agreement entered into [in this case] did not contemplate a long-term relationship with the kinds of continuing obligations and wide-reaching contacts envisioned by the *Burger King* contract.").  A nonresident defendant may not be sued in a forum solely because of fortuitous contacts or the unilateral activity of another party, but jurisdiction is proper where the contacts "proximately result from actions by the defendant *himself* that

create a substantial connection with the forum State." *Id.* at 1191 (quotations and citations omitted). "For example, 'with respect to interstate contractual obligations, [the Court has] emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions for the consequences of their activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 473).

The Fifth Circuit has held that if a nonresident initiates the negotiation of a long-term contractual relationship with a company located in Texas, with the representatives of that company in Texas, that may be "reaching out" to create a contact sufficient to create personal jurisdiction over the nonresident in Texas. *Central Freight Lines Inc. v. APA Transport Co.*, 322 F.3d 376, 382 (5th Cir. 2003) ("[A]ll of the formal negotiations took place via telephone and written correspondence between the two parties from their respective headquarters. In other words, [the defendant] can not really dispute the fact that, during the course of negotiations, [it] specifically and deliberately 'reached out' to a Texas corporation by telephone and mail with the deliberate aim of entering into a long-standing contractual relationship with a Texas corporation."). Although it is unclear whether Cammarata or Rimkus initiated Cammarata's interview for a job at Rimkus, it is undisputed that Cammarata came to Texas to interview for the job and worked closely with Rimkus's Houston office while performing the job in Louisiana. Moreover, the language in the Employment Agreement put Cammarata on notice that he could be haled into a Texas court, in light of the other circumstances of the relationship with Rimkus. A choice-of-law provision by itself is insufficient to create personal jurisdiction or put a defendant on notice that it might be subject

to suit in a different state, but it is nonetheless a factor in the minimum-contacts analysis. *Stuart*, 772 F.2d at 1195 ("[C]hoice-of-law provisions warrant some weight in considering whether a defendant has purposefully invoked the benefits and protection of a state's laws for jurisdictional purposes, 'although such a provision standing alone would be insufficient to confer jurisdiction.'" (quoting *Burger King*, 471 U.S. at 482); *see also Nw. Airlines, Inc. v. Astraea Aviation*, 111 F.3d 1386, 1390 (8th Cir. 1997).  In *Central Freight Lines*, the court described a choice-of-law clause as one way that a defendant might be put on notice that it could be amenable to suit in Texas, even absent a forum-selection clause:  "Although the [contract] does not contain a forum-selection clause, a choice-of-law clause, or some other provision that could have put [the defendant] on specific notice that it might be amenable to suit in Texas . . . ."  *Central Freight Lines*, 322 F.3d at 383.

The facts show that Cammarata entered into a long-term relationship with Rimkus. He had extensive communications with Rimkus personnel in Houston over the years.  He frequently traveled to Houston to meet with Rimkus personnel.  He worked on Texas investigations with Rimkus's Houston office.  Cammarata's contacts with Texas were under an Employment Agreement that specified the application of Texas law to any dispute. Cammarata's contacts with Texas satisfied the minimum-contacts standard and were such that he should reasonably have anticipated being "haled" into a Texas court in a dispute arising under the Employment Agreement.

2.     *The Fairness of Exercising Jurisdiction*

In deciding whether it is fair and reasonable to require a nonresident to defend in Texas, a court must consider several factors: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Central Freight Lines*, 322 F.3d at 384 (citations omitted); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 324 n.9 (5th Cir. 1996).  "Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable.  The defendant must make a 'compelling case.'"  *Central Freight Lines*, 322 F.3d at 384 (quoting *Burger King*, 471 U.S. at 477).

Cammarata argues that he would be substantially burdened if he is required to defend in Texas, that Texas has only a minimal interest in the case, and that Louisiana has a substantial interest in this case.  None of these arguments persuasively demonstrates that "traditional notions of fair play and substantial justice" would be offended by asserting personal jurisdiction over Cammarata in this case.  Cammarata is burdened by litigating in Texas, but Rimkus would be burdened by litigating in Louisiana.  Texas has an interest in this litigation about a contract executed in Texas, with a Texas company, that calls for a Texas forum, and that requires the application of Texas law.  *Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921, 923 (5th Cir. Unit A Aug. 1981).  It is not

unfair to require Cammarata to respond in Texas to an action on an Employment Agreement that he entered into with a Texas corporation and that specified a Texas forum and the application of Texas law.  Asserting personal jurisdiction over Cammarata in this case is not unconstitutionally offensive to traditional notions of fair play and substantial justice in light of Texas's interest in the case. *See Cental Freight Lines*, 322 F.3d at 385 (finding it fair and reasonable to assert personal jurisdiction over a case, even though a counterclaim, with identical claims, had been pending in another state for six months).

The parties' execution of and performance under the Employment Agreement created minimum contacts sufficient to establish jurisdiction.  It is neither unfair nor unreasonable for a Texas court to exercise specific personal jurisdiction over Cammarata.  The motion to dismiss for lack of personal jurisdiction is denied.

## III.   The Motion to Transfer Venue

### A.    The Applicable Legal Standard

A motion to transfer venue from one federal district court to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The purpose of this statute is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy, and money.  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir. 2001).  The decision to transfer a pending case is committed to the sound discretion of the district court.

*See Action Indus. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 339 (5th Cir. 2004); *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).  The party moving for a change of venue bears the burden of demonstrating why the forum should be changed.  *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 04-2391, 2005 WL 2415960, at *2 (N.D. Tex. Sept. 30, 2005).  "A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party . . . ."  *Toshiba*, 2005 WL 2415960, at * 3; *see also Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003).  The Fifth Circuit has also stated that "the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."  *In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004).

Whether to transfer a case under section 1404(a) "turns on a number of private and public interest factors, none of which are given dispositive weight."  *In re Volkswagen, AG*, 371 F.3d at 203 (citations omitted).  The concerns include: (1) the availability of compulsory process for unwilling witnesses and cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the plaintiff's choice of forum; (4) the possibility of delay and prejudice if transfer is granted and all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) administrative difficulties; and (6) the familiarity of the forum with the law that will govern the case.  *See Toshiba*, 2005 WL 2415960, at * 3; *Lebouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1059 (S.D. Tex. 1998); *Dearing v. Sigma Chem. Co.*, 1 F. Supp. 2d 660, 664 (S.D. Tex. 1998); *Dupre v.*

17

*Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Hogan v. Malone Lumber, Inc.*, 800 F. Supp. 1441, 1443 (E.D. Tex. 1992).  A court may consider a wide range of circumstances in evaluating the facts involved in each case.  *See Hogan*, 800 F. Supp. at 1443; *Frazier v. Commercial Credit Equip. Corp.*, 755 F. Supp. 163, 166 (S.D. Miss. 1991); *Fletcher v. S. Pac. Transp. Co.*, 648 F. Supp. 1400, 1401 (E.D. Tex. 1986) (citations omitted).

### B.    Analysis

Cammarata argues that venue is improper in this district under 28 U.S.C. § 1391(a), and alternatively, that this court should transfer this action to the Federal District Court in the Eastern District of Louisiana.  Cammarata asserts that litigating in Texas would be inconvenient; that many of the witnesses reside in Louisiana; and that Louisiana has a substantial interest in litigating the case there.

The federal venue statute in diversity actions states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  Venue is a "forum limitation imposed for the convenience of the parties.  As a concept of convenience rather than jurisdiction it may be conferred on a court

18

either by consent or by the failure of the defendant to make a timely objection." *United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969); *see also Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000) ("[A] forum-selection clause is best understood as a potential defendant's ex ante agreement to waive venue objections to a particular forum.") (quoting *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375–76 (7th Cir. 1990)).  This court has found that the mandatory forum-selection clause in the Employment Agreement was reasonable.  Cammarata has waived his objection that venue is improper under section 1391(a).

Cammarata argues that a substantial part of the events giving rise to this suit occurred in Louisiana, rather than Texas.  There can be more than one district in which a substantial part of the events giving rise to the claim occurred.  14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806.1 (3d ed. 2007); *see also Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F. Supp. 455, 459 (S.D. Tex. 1996) (holding that the analysis of whether or not venue is proper in a judicial district based upon the occurrence of a "substantial part of the events or omissions" does not require the court "to determine the 'best' venue for a cause of action pending before it, but rather must determine only whether or not its venue is proper").  This court finds that this district is a proper venue for this action.

Cammarata alternatively seeks a transfer under 28 U.S.C. § 1404(a).  Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."

*Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  Section 1404(a) protects litigants, witnesses, and the public against unnecessary inconvenience and expense and avoids wasted time, energy, and money.  *Id.* at 616.

Cammarata argues that its witnesses, including the present and former employees of U.S. Forensics, reside in Louisiana; Rimkus responds that its witnesses and documents are located in Texas.  While it is likely true that litigating this case in Louisiana would be more convenient for Cammarata, it would be much less convenient for Rimkus.  A case should not be transferred if the "only practical effect is to shift inconvenience from the moving party to the nonmoving party."  *The CIT Group/Commercial Servs., Inc. v. Romansa Apparel, Inc.*, No. 02-1954, 2003 WL 169208, at *4 (N.D. Tex. Jan. 21, 2003) (citations omitted).  Although Cammarata has identified nonparty witnesses who reside and work in Louisiana, he does not describe the nature or relevance of the testimony these witnesses would offer.  *See Ledouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) ("The moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently located.  Instead, the movant must specifically identify the key witnesses and outline their testimony."); *see also* 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (3d ed. 2007).  Cammarata has failed to meet this burden.

The other factors do not weigh in favor of transfer.  The risks of delay and prejudice are minimal and both states have an interest in this action.  Rimkus elected to file suit in this

district, in accordance with the parties' forum-selection provision. The balance of factors does not favor transfer.

The motion to transfer is denied.

**IV.    Conclusion**

The motion to dismiss for lack of personal jurisdiction and the motion to transfer venue are denied.

SIGNED on May 22, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge