**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RIMKUS CONSULTING GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-0405 |
| | § | |
| NICKIE G. CAMMARATA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Rimkus Consulting Group, Inc. has sued its former employee, Nickie G. Cammarata. Rimkus seeks to enforce an eighteen-month noncompetition provision in an employment agreement that Cammarata signed. Cammarata has filed a motion asking this court to abstain and dismiss this case or, in the alternative, to abstain and stay these proceedings in favor of a related proceeding pending in Louisiana state court. (Docket Entry No. 19). Rimkus has responded, (Docket Entry No. 28); and Cammarata has replied, (Docket Entry No. 30). Both parties have also filed supplemental briefs. (Docket Entry Nos. 25, 31, 47).

Based on a careful review of the motion, the response, and reply; the parties' submissions; the arguments of counsel; the record; and the applicable law, this court denies Cammarata's motion to abstain and dismiss or stay. The reasons are set out below.

**I.     Background**

Rimkus Consulting Group, Inc. is a Texas company with its principal place of business in Houston, Texas. Rimkus's primary business is to provide investigative and

forensic engineering services for use in analyzing property damage and loss from storms, fires, industrial accidents, and construction defects. Rimkus also does vehicle accident reconstruction work. Cammarata is a Louisiana resident who worked on matters in both Louisiana and Texas during his employment with Rimkus.

In October 1996, Rimkus hired Cammarata as a full-time salaried employee to provide forensic engineering services. Cammarata signed an "Employment Agreement: Salaried Employee." The Agreement states that Cammarata will not work in competition with Rimkus, solicit current or former Rimkus employees, or solicit Rimkus customers for eighteen months after his employment ends. (Docket Entry No. 1, Ex. A at 4–5). The Agreement provides that disputes arising out of the Agreement will be adjudicated in Harris County, Texas and that Texas law governs. (*Id.*, Ex. A at 11). During his employment, Cammarata worked on matters in both Texas and Louisiana.

Cammarata resigned from Rimkus on November 15, 2006. With two other former Rimkus employees, he created and began to work for U.S. Forensic, L.L.C., a company that also provides forensic engineering services to determine the cause, origin, and extent of losses from failures and accidents. On the date he resigned from Rimkus, Cammarata sued Rimkus in Louisiana state court seeking a declaratory judgment that the noncompete provision in the Agreement he had signed was unenforceable. In January 2007, Rimkus filed this suit against Cammarata, alleging that he had violated the noncompete agreement, had solicited business from Rimkus clients, and had misappropriated Rimkus's trade secrets. Rimkus seeks to enjoin Cammarata from continuing to work in competition with Rimkus

during the period of the noncompete, and from soliciting Rimkus employees and customers and from using Rimkus trade secrets. Rimkus also seeks damages. (Docket Entry No. 1, Ex. A at 4–5).

Cammarata asks this court to abstain and dismiss this case under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), arguing that this case and the earlier filed Louisiana state court proceeding involve the same causes of action, subject matter, relief sought, and parties. In the alternative, Cammarata requests that this court abstain and stay this case until the Louisiana state-court case is completed. In response, Rimkus contends that Cammarata has failed to establish that the exceptional circumstances necessary to warrant abstention under *Colorado River* are present.

## II.     Abstention under *Colorado River*

"As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." *Colorado River*, 424 U.S. at 817. "This obligation does not evaporate simply because there is a pending state court action involving the same subject matter." *Id.* at 813–14. Federal courts may abstain from deciding an action to preserve "traditional principles of equity, comity, and federalism." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189 (5th Cir. 1988); *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990). Whether to decline to decide an action under one of the abstention doctrines is in the federal court's discretion. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 n.7

(5th Cir. 2006) (quoting *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002)).

"[T]he potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify staying of the exercise of federal jurisdiction" under the *Colorado River* abstention doctrine. *Colorado River*, 424 U.S. at 816. As the Supreme Court explained,

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. This difference in general approach between state-federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Id.* at 817 (citations omitted). Rather than simply considering potential "conflict" between state and federal litigation, "[t]he policies underlying *Colorado River* abstention are 'considerations of "[w]ise judicial administration," giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.*

As the Supreme Court also explained, "[g]iven this obligation [to exercise jurisdiction given to federal courts], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for

abstention [under previously recognized doctrines]." *Id.* at 818; *see also Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 298 n.4 (8th Cir. 1995) ("Because the policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of *Pullman*, *Younger* and *Burford* abstention, which are based on 'weightier' constitutional concerns."). A federal court may abstain to conserve federal judicial resources only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813. Those "exceptional circumstances" must be such that "'repair to the State court would clearly serve an important countervailing interest.'" *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 14 (1983) (quoting *Colorado River*, 424 U.S. at 813). This is true "even if diversity of citizenship is the only jurisdictional foundation," as is the case here. *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995).

*Colorado River* abstention applies only if there are parallel state and federal court proceedings. *See Brown*, 462 F.3d at 395 n.7; *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'"). Suits are parallel if they "involv[e] the same parties and the same issues." *RepublicBank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (quoting *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973)); *see Brown*, 462 F.3d at 395 n.7 (quoting *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 734 (9th Cir.1991)). Mere "commonality of subject matter does not amount to the 'contemporary exercise of concurrent jurisdictions.'" *See Dittmer*, 146

F.3d at 118. Most courts define "parallelism" for purposes of *Colorado River* abstention in terms of "substantially the same parties" litigating "substantially the same issues." *See, e.g.*, *Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *McIntosh*, 828 F.2d at 1121; *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir. 1995); *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991), *cert. denied*, 503 U.S. 971 (1992); *Day v. Union Mines, Inc.*, 862 F.2d 652, 655 (7th Cir. 1988).

If state and federal suits are parallel, the federal court must then evaluate whether there are "exceptional circumstances" that make abstention appropriate. The Supreme Court has identified the following factors to guide the analysis:

(1) whether there is a *res* over which one court has established jurisdiction;

(2) the inconvenience of the federal forum;

(3) whether maintaining separate actions may result in piecemeal litigation;

(4) which case has priority—not simply looking at which case was filed first; rather, focusing on the relative progress made in each case;

(5) whether state or federal law controls; and

(6) the adequacy of the state forum to protect the federal plaintiff's rights.

The first four factors are explicitly identified in *Colorado River*, 424 U.S. at 818. The Court added the fifth and sixth factors in *Moses H. Cone*, 460 U.S. at 23, 26.

The Supreme Court has cautioned that "[t]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Moses H. Cone*, 460 U.S. at 16. These factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21. In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. As the Court explained:

> We emphasize that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the surrender of that jurisdiction.

*Id.* at 25–26.

The issue presented by Cammarata's motion is whether this case presents "the clearest of justifications [that alone] will warrant" abstention. *Colorado River*, 424 U.S. at 819; *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999). The threshold issue—whether the cases are parallel—and the *Colorado River* factors are analyzed below.

**III.   Analysis**

   **A.   Parallel Cases**

The threshold issue is whether the Louisiana suit and this federal suit are "parallel." The Fifth Circuit has noted that "a mincing insistence on precise identity" of parties and issues is not required to find that cases are parallel. *McIntosh*, 828 F.2d at 1121; *see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992); *MidTexas*

*Int'l Ctr., Inc. v. Myronowicz*, No. 3:05-cv-1957, 2006 WL 2285581, at *2 (N.D. Tex. Aug. 9, 2006). The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005); *Rowley v. Wilson*, No. 05-30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit). "[A]ny doubt regarding the parallel nature of the [state-court] suit should be resolved in favor of exercising jurisdiction." *TruServ Corp.*, 419 F.3d at 592.

Cammarata and two other former Rimkus employees sued Rimkus Consulting Group, Inc. of Louisiana, a Rimkus subsidiary, in Louisiana state court. Cammarata and his coplaintiffs sought a declaratory judgment that the noncompetition and nonsolicitation provisions of his employment agreement with Rimkus were not enforceable under Louisiana law, which requires a noncompetition or nonsolicitation agreement to identify the "parish or parishes, municipality or municipalities, or parts thereof" that the Agreement covers. La. R.S. 23:921(C). Louisiana has a strong public policy disfavoring noncompetition agreements "based on an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1965, p. 5 (La. 6/29/01); 808 So.2d 294, 298. Two

and a half months later, Rimkus sued Cammarata in Houston, seeking a temporary restraining order and injunction to enforce the non competition agreement, by preventing Cammarata from competing against Rimkus, soliciting current and former Rimkus employees, and soliciting Rimkus clients. Rimkus also asserted claims for breach of contract, misappropriation of trade secrets and breach of confidential relationship, and tortious interference with contractual and business relations. Six days later, Cammarata amended his state-court petition to name Rimkus as a defendant.

The central question is whether the issues in this federal suit would be resolved by a decision in the Louisiana state-court suit. "The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state-court] litigation will dispose of all claims presented in the federal case." *TruServ Corp.*, 419 F.3d at 592. "[A]ny doubt regarding the parallel nature of the [state-court] suit should be resolved in favor of exercising jurisdiction." *Id.* The Louisiana case is based on Cammarata's claim that the nonsolicitation and noncompetition provisions in his employment agreement with Rimkus are unenforceable. The Texas case is based on Rimkus's contention that the provisions are enforceable and that Cammarata has violated and continues to violate them. The federal suit involves claims that are not present in the state case. The state-court litigation will not dispose of all the claims presented in the federal case. Rimkus asserts a misappropriation of trade secrets claim (independent of the nonsolicitation and noncompetition Agreement) in the federal suit that it does not assert in the state suit. The misappropriation claim will not be

resolved even if the Louisiana court invalidates the noncompetition provision in the Agreement. The suits do not appear to be parallel.

Even if the suits were parallel, however, abstenion is not warranted under the *Colorado River* factors.

### B.  The *Colorado River* Factors

#### 1.  Jurisdiction Over a *Res*

Under the first *Colorado River* factor, federal-court abstention may be appropriate if a state court first exercises jurisdiction over real property. *Colorado River*, 424 U.S. at 818 (citing *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964)). Neither the state nor federal suits in this case involve a dispute over real property. The first factor supports exercising federal jurisdiction. *See Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006) (rejecting the contention that the absence of a *res* is a "neutral item, of no weight in the scales," and finding instead that the absence of a *res* supports the exercise of federal jurisdiction).

#### 2.  The Inconvenience of the Federal Forum

The second factor examines whether there is "any contention that the federal forum [is] any less convenient to the parties than the state forum." *Moses H. Cone*, 460 U.S. at 19. This factor "should be analyzed as to 'whether the inconvenience of the federal forum is so great' that abstention is warranted." *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 498 (5th Cir. 2002) (citing *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir.

1988)). Relevant considerations are where the suits are pending, where the evidence or witnesses are located, and the availability of compulsory process. *Evanston Ins. Co.*, 844 F.2d at 1191 (5th Cir. 1988).

Rimkus is a Texas company with its headquarters in Houston, Texas. Cammarata is a Louisiana resident and officer of U.S. Forensic, whose headquarters are in Louisiana. The parties entered into the employment Agreement in Houston, Texas with a forum-selection clause providing that "any dispute or other proceeding to enforce the terms of this Agreement shall be adjudicated by a court of competent jurisdiction in Harris County, Texas." (Docket Entry No. 1, Ex. 1, Attachment A). The Agreement also provides that Texas law governs. (*Id.*, Ex. 1, Attachment A). The Louisiana state court has held that Louisiana law applies to Cammarata's claims in his suit in that court and that Jefferson Parish, Louisiana is a proper venue for the suit. (Docket Entry No. 19, Exs. D, E).

Courts in the Fifth Circuit analyze the validity of forum-selection and choice-of-law clauses under federal law, regardless of whether jurisdiction is based on diversity or on a federal question. *See Int'l Software Sys. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996); *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). Under federal law, forum-selection and choice-of-law provisions are presumptively valid. *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 640 (1985) ("The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid.")). The presumption of

enforceability may be overcome by a clear showing that the clause is unreasonable under the circumstances. *Haynsworth*, 121 F.3d at 963 (citing *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972)). Unreasonableness potentially exists if the forum-selection or choice-of-law provision is the product of fraud or overreaching; if the party seeking to escape enforcement will effectively be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; if the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or if enforcement of the provision contravenes a strong public policy of the forum state. *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *The Bremen*, 407 U.S. at 12–13, 15, 18).

This court has already found that Cammarata has failed to meet his substantial burden of rebutting the presumptive validity of the forum-selection clause in his employment agreement with Rimkus. (Docket Entry No. 21). Because the forum-selection clause is enforceable, Cammarata has waived any objection to the inconvenience of this forum. *See Boccard USA Corp. v. TigPro, Inc.*, No. H-07-0177, 2007 WL 1894154, at *10 (S.D. Tex. July 2, 2007). This factor does not weigh in favor of abstention.

### 3. Avoidance of Piecemeal Litigation

The third factor represents the consideration that was "paramount in *Colorado River* itself:" the "danger of piecemeal litigation." *Moses H. Cone*, 460 U.S. at 19. "The prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Evanston Ins. Co.*, 844 F.2d at 1192. "*Duplicative* litigation, wasteful though it may be, is a

necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction. The real concern at the heart of [this factor] is the avoidance of *piecemeal* litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir. 2000). In contrast to piecemeal litigation, the problem of duplicative litigation can be eliminated by the application of preclusion rules after the completion of one suit. *See Stewart*, 438 F.3d at 488.

In most cases, the enforcement of the forum-selection clause avoids potentially duplicative or even piecemeal actions from becoming an actual problem. *Cf. Hy Cite Corp. v. Advanced Mktg. Int'l, Inc.*, No. 05-C-722-S, 2006 WL 3377861, at *5 (W.D. Wis. Apr. 10, 2006) ("Enforcing the forum selection clause is the clearest way to avoid the multiple and conflicting rulings plaintiffs fear will occur."). In most cases in which a federal court denies a *Colorado River* motion and enforces a forum-selection clause, the state court has not indicated its intention to proceed despite the forum-selection clause. *See, e.g.*, *ELA Med., Inc. v. Arrhythmia Mgmt. Assocs., Inc.*, No. 06-3580, 2007 WL 892517, at *12 (D. Minn. March 21, 2007) ("[T]his court does not anticipate that both courts would insist on resolving this action knowing the other is doing the same, particularly where the Contract provides for such litigation here . . . .").

There are, however, cases in which a federal court has declined to abstain on the basis of *Colorado River* despite the risk that the state court considering the parallel case might

decline to enforce a clause selecting a different forum and choosing the law of that forum. In *Oldcastle Precast, Inc. v. Sunesis Construction Co.*, No. 5:07-81-JMH, 2007 WL 1655380 (E.D. Ky. June 6, 2007), the parties, a general and subcontractor, entered into an agreement for construction work. The agreement contained a mandatory Kentucky choice-of-forum clause. After a dispute arose, suit was brought in an Ohio state court. Five days later, the state-court defendant filed suit in federal court in Kentucky. The state-court defendant moved to dismiss that case based on the Kentucky choice-of-forum clause, while the federal-court defendant (the state-court plaintiff) filed a motion to dismiss in the federal court, based on *Colorado River*. When the Kentucky federal court issued its opinion, the Ohio state court had not yet decided whether to enforce the forum-selection clause and dismiss the suit. The federal court noted that if the state court found that the forum-selection clause was invalid and unenforceable, there would be a significant chance that the case would be litigated in state court under Ohio law and in federal court under Kentucky law. The federal court nonetheless declined to abstain. "Although there is a high risk of piecemeal litigation in this case, the Court will honor the forum-selection and choice-of-law provisions to which the two sophisticated businesses agreed." *Id.* at *5. Notably, there was no *res* at issue in either the federal or state suits.

The problem that was a possibility in *Oldcastle* is present here. The Louisiana state court has decided that the Texas forum-selection and choice-of-law provisions in the parties' employment Agreement are invalid or unenforceable. Despite the contractual Texas choice

-of-forum and choice-of-law provisions, this case may be adjudicated in both Louisiana and Texas, under both Louisiana and Texas law, with the risk of inconsistent rulings.  The risk of inconsistent judgments is not a sufficient justification for abstention.  *Kelly Inv.*, 315 F.3d at 498 (citing *Evanston Ins. Co.*, 844 F.2d at 1192; *Murphy*, 168 F.3d at 738).  Nor is the prevention of duplicative litigation "a factor to be considered in an abstention determination." *Black Sea Inv., Ltd.*, 204 F.3d at 650 (citing *Evanston Ins. Co.*, 944 F.2d at 1192).  The "piecemeal litigation" factor does not weigh in favor of establishing "exceptional circumstances" warranting abstention.

### 4.     The Order in Which Jurisdiction Was Obtained

Under the fourth factor, which examines which case has priority, the order in which jurisdiction was obtained "'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'"  *Evanston Ins. Co.*, 844 F.2d at 1190 (quoting *Moses H. Cone*, 460 U.S. at 21).  The parties dispute the order in which jurisdiction was obtained because Cammarata sued a Rimkus subsidiary, Rimkus Consulting Group, Inc. of Louisiana ("RGCL"), on November 15, 2006.  He did not amend his state-court petition to name Rimkus as a defendant until February 6, 2007.  In the meantime, Rimkus filed suit against Cammarata in federal court on January 30, 2007. Rimkus argues that the federal court obtained jurisdiction over the parties first, noting that the Louisiana state court maintained RGCL's exception of no right of action on the ground that Cammarata's employment Agreement was with Rimkus, not RCGL, and that Rimkus was the

proper named defendant. Cammarata contends that the Louisiana state court obtained jurisdiction over the parties first, arguing that Rimkus and RCGL are a single business enterprise that operates as one entity, such that the conduct of one may be imputed to the other.

The parties also dispute the progress of the Louisiana state-court suit. Rimkus argues that much of the state-court activity that Cammarata documents in his motion to abstain has revolved around other parties in the state-court suit who are not parties in the federal-court suit. The parties do not dispute, however, that Cammarata has been deposed and has responded to a request for production in the federal-court suit. Nor do the parties dispute that they have engaged in discovery in the state-court suit and that the Louisiana court has issued a ruling on Cammarata's motion for partial summary judgment. In this ruling, the Louisiana state court held that "pursuant to Louisiana law, the covenant not to compete clauses contained in Paragraphs 8(a) and the non-solicitation of customer(s) clauses contained in Paragraphs 8(c) of the respective contracts are invalid and unenforceable." (Docket Entry No. 31, Ex. E). Cammarata argues that the Louisiana state court has ruled on the "primary and overwhelming merits issue in this case." (Docket Entry No. 31 at 3). Rimkus contends that the appeal of the Louisiana state court's decision is likely to delay the state-court proceedings.

This factor weighs in favor of abstention. The Louisiana state-court suit has progressed farther than the suit in this court.

### 5. The Impact of Federal Law

The fifth factor asks whether and to what extent federal law provides the rule of decision on the merits. "The absence of a federal law issue does not counsel in favor of abstention . . . . The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances." *Evanston Ins. Co.*, 844 F.2d at 1193 (quoting *Moses H. Cone*, 460 U.S. at 26). *See Haynsworth*, 121 F.3d at 962.

There are no federal-law claims in this case. Cammarata argues that the Louisiana state court should decide the issues in this case because Louisiana has a strong public policy restricting the enforcement of noncompetition agreements and because the "primary focus on this lawsuit, and the Louisiana state court proceeding, is whether Mr. Cammarata can be prevented from working and earning a living in the state of Louisiana." (Docket Entry No. 19 at 16). The parties' agreement is not restricted to Louisiana, and U.S. Forensics now competes with Rimkus in Texas, Mississippi, and Alabama as well as in Louisiana.

The fifth factor is neutral or weighs in favor of retaining jurisdiction.

### 6. Protecting the Litigants' Interests

The sixth factor asks whether the state-court action will adequately protect the rights of the federal-court plaintiff, Rimkus. This factor "can only be a neutral factor or one that weighs against, not for, abstention. A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings." *Evanston Ins. Co.*, 844 F.2d at 1193. The state

courts are competent to determine the enforceability of the parties' forum-selection agreements. The sixth factor does not weigh in favor of abstention.

In summary, the state and federal suits are not parallel because the federal suit asserts claims that the state-court suit will not resolve. in addition, the balance of the *Colorado River* factors do not weigh in favor of abstention. This case does not present "exceptional circumstances" that warrant abstention under *Colorado River*. Cammarata's motion to abstain is denied.

### IV.   Conclusion

Cammarata's motion to abstain is denied.

SIGNED on November 29, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge