IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RIMKUS CONSULTING GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-0405 |
| | § | |
| NICKIE G. CAMMARATA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Rimkus Consulting Group, Inc. ("Rimkus") sued its former employee, Nickie G. Cammarata, after he left to work for a new company formed with other ex-Rimkus employees. Both Rimkus and the new company, U.S. Forensic, LLC, are in the business of providing investigative and forensic engineering services, primarily for use in insurance disputes and litigation involving accidental or unexpected damage to people or property. In this suit, Rimkus alleged that Cammarata breached noncompetition and nonsolicitation covenants in his written employment agreement with Rimkus and that he was using secrets and confidential information learned from his work at Rimkus. Before Rimkus filed this suit, Cammarata had sued Rimkus in Louisiana seeking a declaratory judgment that the noncompetition and nonsolicitation provisions in the employment agreement were invalid. The employment agreement specified that Texas law applies. Cammarata lived in Louisiana and primarily worked in Louisiana for both Rimkus and his new employer. Under Louisiana law, noncompetition and nonsolicitation covenants are generally unenforceable as against that forum's public policy, as are forum-selection and choice-of-law clauses in employment agreements. The Louisiana state trial court granted Cammarata's motion for partial summary judgment, concluding

that under Louisiana's choice-of-law rules, Louisiana law rather than Texas law applied to the agreement and "that, pursuant to Louisiana law, the covenant not to compete clauses . . . and the non-solicitation of customer(s) clauses . . . are invalid and unenforceable." (Docket Entry No. 71, Ex. H).

In this federal suit, Cammarata filed two motions to dismiss Rimkus's claims for breach of the noncompetition and nonsolicitation provisions in the employment agreement. Cammarata based his motions to dismiss on the preclusive effect of the Louisiana state court ruling that the noncompetition, nonsolicitation, forum selection, and choice-of-law provisions in the employment agreement were invalid. (Docket Entry Nos. 71, 105). Cammarata also filed a counterclaim in this federal suit, asserting that Rimkus violated the Texas Business and Commerce Code by seeking to enforce the noncompetition and nonsolicitation covenants knowing that they were unreasonably broad. (Docket Entry No. 125). Rimkus moved to strike Cammarata's counterclaim as untimely filed. (Docket Entry No. 128).

After a three-day hearing on Rimkus's preliminary injunction application, this court concluded that Rimkus was not entitled to injunctive relief against Cammarata. (Docket Entry No. 159, August 13, 2008 Memorandum and Opinion). This court granted Rimkus's motion to strike Cammarata's counterclaim. (*Id.*). With respect to Cammarata's preclusion arguments, this court concluded that "at a minimum the Louisiana court determined that in Louisiana, the contractual forum-selection, choice-of-law, noncompetition, and nonsolicitation provisions are unenforceable. That ruling is entitled to preclusive effect in this court." (*Id.*). Because Rimkus was not entitled to the preliminary injunction it sought, this court did not then resolve "the issue of whether, under Full Faith and Credit, the Louisiana court's ruling that Louisiana law applies despite the choice of Texas

2

law in the parties' Employment Agreement invalidates the choice-of-law, noncompetition, and nonsolicitation provisions in all states." (*Id.*). Cammarata's motions to dismiss based on *res judicata* were denied as moot.

Cammarata has moved for reconsideration of this court's decision to strike his counterclaim as untimely, or in the alternative, for leave to file a counterclaim. (Docket Entry No. 162). Cammarata filed a supplement to his motion, (Docket Entry No. 166), and Rimkus responded, (Docket Entry No. 167).

Cammarata also contends that his motions to dismiss based on preclusion are not moot because Rimkus seeks damages in this federal suit. Cammarata has filed a third motion to dismiss Rimkus's claims for breach of the noncompetition and nonsolicitation provisions based on preclusion. (Docket Entry No. 169). Rimkus responded to this third motion to dismiss. (Docket Entry No. 178).

Based on a careful review of the motions and responses, the parties' submissions, the record, and the applicable law, this court denies Cammarata's motion for reconsideration, grants Cammarata leave to file the counterclaim, and denies Cammarata's motion to dismiss based on preclusion. The reasons for these rulings are explained below.

## I.    Background

The relevant background is detailed in this court's previous memoranda and opinions and is only summarized here. Briefly, Rimkus is a forensic engineering contractor with its principal place of business in Houston, Texas. Founded in 1983, Rimkus has 30 offices in 18 states and performs forensic engineering services across the country. Rimkus analyzes unexpected accidents and occurrences that cause damage to people or property, generally for use in insurance disputes or

3

litigation.  In October 1996, Rimkus hired Cammarata, a Louisiana resident, as a full-time salaried

employee working on providing forensic engineering services.  Cammarata was hired at Rimkus's

office in Houston, Texas, where he signed the Employment Agreement with Rimkus.  The

Agreement was between the "Company," defined as Rimkus Consulting Group, Inc., and the

"Employee," defined as Cammarata.

The Agreement's noncompetition provision states as follows:

> a.   Employee will not, directly or indirectly, own, manage,
> finance, control, or participate in the ownership, financing, or
> control of, or be connected as a partner, principal, agent,
> employee, independent contractor, management advisor,
> and/or management consultant with, or use or permit his
> name or resume to be used in connection with any business or
> enterprise performing consulting services similar to those
> which are carried on by the Company in the "Designated
> Geographic Area."  For the purposes of this Agreement
> "Designated Geographic Area" shall mean any standard
> metropolitan statistical area (or if a client is not located in a
> standard metropolitan statistical area, then the city, town, or
> township in which such client is located and the counties or
> parishes contiguous thereto) in which a client or clients of the
> Company are located and from which such client or clients
> have engaged Company on not less than five (5) separate files
> or engagements during the five (5) calendar years proceeding
> termination of Employee's employment with Company.  If
> Company has received less than five (5) such assignments or
> engagements from a client in any Designated Geographic
> Area, then Employee shall be free to compete in such
> Designated Geographic Area. . . .  This covenant against
> competition shall be construed as a separate covenant
> covering competition within the State of Texas, or in any
> other State where the Company, directly or indirectly,
> whether through itself or its representative or agents,
> conducts business; . . .

(Docket Entry No. 1, Ex. A at 4–5).  The Agreement also contained a clause prohibiting solicitation

of Rimkus's employees and of Rimkus's customers:

4

      b.      Employee agrees that after termination of employment with the Company, he will not, directly or indirectly, solicit, employ, or in any other fashion, hire persons who are, or were, employees, officers, or agents of the Company, until such person has terminated his employment with the Company for a period of eighteen (18) months;

      c.      Employee agrees, that for a period lasting until eighteen (18) months after termination of his employment, he will not at any time, directly or indirectly, solicit the Company's customers.

(Docket Entry No. 1, Ex. A at 5).  The Agreement stated that "any dispute or other proceeding to enforce the terms of this Agreement shall be adjudicated by a court of competent jurisdiction in Harris County, Texas" and that "[t]he Agreement and all rights, obligations and liabilities arising hereunder shall be governed by, and construed and enforced in accordance with the laws of the State of Texas (excluding its conflicts of law provisions) applicable to contracts made and to be performed therein."  (Docket Entry No. 1, Ex. A at 11).

Cammarata worked for Rimkus Consulting Group of Louisiana ("RCGL"), a wholly owned subsidiary of Rimkus.  Cammarata worked in RCGL's Metairie, Louisiana office.  He received his paycheck and W-2 forms from RCGL but was provided access to Rimkus customer information, Rimkus business plans, and Rimkus operations information.  Cammarata worked on civil engineering aspects of property damage claims.  He did not work on personal injury claims, vehicle accidents, or industrial accidents.  When he left Rimkus, Cammarata was the central region property manager.  His geographic area of responsibility covered the central region from Louisiana to the Canadian border.  During his ten years of employment with Rimkus, Cammarata worked primarily on jobs inside the State of Louisiana.

Cammarata resigned from Rimkus on November 15, 2006.  With two other former Rimkus

employees who worked at RCGL in Louisiana, Gary Bell and Mike DeHarde, Cammarata created and immediately began to work for U.S. Forensic.  Like Rimkus, U.S. Forensic provides investigative and forensic services, primarily to determine the cause, origin, and extent of losses from failures and accidents.  The parties do not dispute that U.S. Forensic competes with Rimkus in providing investigative and forensic engineering services, although U.S. Forensic does not offer as broad a range of services as Rimkus.  U.S. Forensic currently has offices in Louisiana, Mississippi, and Florida and employs engineers registered in twenty states.  The majority of U.S. Forensic's clients are in Louisiana and the majority of the company's work is performed in that state.

Since leaving Rimkus and becoming a partner of U.S. Forensic, Cammarata has not worked in any of the "Designated Geographic Areas" that Rimkus identifies as subject to the noncompetition requirement under the Employment Agreement.  The evidence shows that Cammarata has done one job in Texas since he began working for U.S. Forensic and none in Mississippi, Alabama, or Florida.  Most of Cammarata's work and that of U.S. Forensic has been in Louisiana.  Cammarata has talked to the Mississippi State Bar, the Mississippi Claims Association, and to a group of flood-claim adjusters in Florida, attempting to get work in those states in the future.

On the date he resigned from Rimkus, November 15, 2006, Cammarata sued Rimkus in Louisiana state court.  Cammarata sought a declaratory judgment that the noncompetition and nonsolicitation covenants in the Employment Agreement were unenforceable.  In January 2007, Rimkus sued Cammarata in this federal case, alleging that Cammarata had violated the noncompetition covenant, had solicited business from Rimkus clients, had solicited Rimkus employees, and had misappropriated Rimkus's trade secrets.  Rimkus sought to enjoin Cammarata from continuing to compete with Rimkus during the noncompetition provision's period, from

soliciting Rimkus employees and customers, and from using Rimkus trade secrets.  Rimkus also sought damages for Cammarata's alleged breach of the Employment Agreement and misappropriation of trade secrets.  (Docket Entry No. 1, Ex. A at 4–5).

The Louisiana state court issued an order on March 26, 2007, stating that it would "apply Louisiana law to the claims of the plaintiffs."[1]  (Docket Entry No. 19, Ex. D).  On July 26, 2007, the Louisiana state court issued a final judgment stating that "pursuant to Louisiana law, the covenant not to compete clauses contained in Paragraphs 8(a) and the non-solicitation of customer(s) clauses contained in Paragraphs 8(c) of the respective contracts are invalid and unenforceable."  (Docket Entry No. 71, Ex. H).  Rimkus appealed.  On March 25, 2008, the Louisiana Fifth Circuit Court of Appeals affirmed the trial court's decision that Louisiana law applied to the parties' agreements and that the noncompetition and nonsolicitation covenants were unenforceable.  *Bell v. Rimkus Consulting Group, Inc. of La.*, 983 So.2d 927 (La. Ct. App. 2008).  In finding that Louisiana law applied to the 1996 Employment Agreement despite the choice- of-law clause specifying that Texas law would apply, the Louisiana court of appeals stated:

> Forum selection clauses will be upheld unless they contravene strong public policy of the forum in which the suit is brought.  LA. C.C. art. 3450.  LA. R.S. 23:921A(2), a provision which was added by the legislature in 1999, is an expression of strong Louisiana public policy concerning forum selection clauses. . . .
>
> Louisiana law expressly provides that conventional obligations are governed by the law of the state whose policies would be most seriously impaired if its law were not applied to the issue.  Further, issues of conventional obligations may be governed by law chosen by the parties, *except to the extent that law contravenes the public policy of the state whose law would be applicable under La. C.C. art 3537.*

---

[1] Bell and DeHarde joined Cammarata as plaintiffs in the Louisiana lawsuit.

7

As previously stated herein, Louisiana has a longstanding public policy to prohibit or severely restrict non-competition provisions in employment agreement which curtail an employee's right to earn his livelihood. These agreements are in derogation of the common right, and they must be strictly construed against the party seeking their enforcement. Application of Texas law to this dispute would thwart Louisiana's longstanding public policy and interest in this type of matter.

According to well established Louisiana law and jurisprudence, the forum selection and choice of law provisions contained in the 1995[2] and 1996 employment contracts are null and void. Thus, the agreements in this case are governed by Louisiana law.

*Bell*, 983 So.2d at 932–33 (citations omitted).[3]

---

[2] The 1995 contract referred to is the agreement between Rimkus and Bell, who was also a plaintiff in the Louisiana lawsuit and is a defendant in a federal suit filed in this district, *Rimkus Consulting Group, Inc. v. Gary Bell*, Civ. A. No. H-07-910, which was consolidated with this case on December 12, 2008.

[3]Article 3540 of the Louisiana Civil Code states:

All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

LA. C.C. art 3450.

Article 3537 of the Louisiana Civil Code states:

Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

In his motions to dismiss, Cammarata asserted that the Louisiana court's ruling was entitled to *res judicata* effect, requiring this court to dismiss Rimkus's claims for injunctive relief based on Cammarata's breach of the noncompetition and nonsolicitation provisions in the Employment Agreement. In ruling on Rimkus's application for a preliminary injunction, this court concluded that the Louisiana court's judgment "clearly precludes relitigation of the issue of whether the forum-selection and choice-of-law provision, as well as the noncompetition and nonsolicitation covenants, are unenforceable in Louisiana, under Louisiana law." (Docket Entry No. 159, August 13, 2008 Memorandum and Opinion, at 24). The "more difficult issue" was "whether the Louisiana court's judgment precludes this Texas court from considering whether Texas choice-of-law rules apply and the enforceability of the contractual choice-of-law provision and the covenants under Texas law." (*Id.*). This court decided that, even if Texas law applied and the noncompetition and nonsolicitation provisions were enforceable outside Louisiana, Rimkus was not entitled to the injunctive relief it

---

LA. C.C. art. 3557.

> Section 921(A) of the Louisiana Revised Statutes states:
>
> > A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
> >
> > (2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

LA. R.S. 23:921(A).

sought.  This court found that, under Texas law, the noncompetition covenant was broader in geographical scope than necessary to protect Rimkus's legitimate business interests and that the nonsolicitation covenant was broader than necessary because it applied to all Rimkus customers, not merely those whom Cammarata had contact with while working for Rimkus.

This court also granted Rimkus's motion to strike Cammarata's counterclaim because Cammarata filed it months after his answer to Rimkus's original complaint.  Cammarata's motion for reconsideration of the refusal to allow him to file a counterclaim, and his third motion to dismiss based on *res judicata*, followed.

## II.    The Motion to Reconsider the Ruling on the Counterclaim

Cammarata moved for reconsideration of this court's grant of Rimkus's motion to strike the counterclaim.  In the alternative, Cammarata moved for leave to assert his counterclaim under Rule 13(f) of the Federal Rules of Civil Procedure.

### A.    The Motion for Reconsideration

On August 13, 2008, this court granted Rimkus's motion to strike Cammarata's counterclaim as untimely.  Cammarata filed his answer to Rimkus's original complaint on January 3, 2008.  He filed a counterclaim asserting a cause of action under § 15.51(c) of the Texas Business and Commerce Code on April 21, 2008.  Cammarata's counterclaim seeks to recover the attorney's fees he has incurred in defending against this suit seeking to enforce noncompetition and nonsolicitation covenants that, according to Cammarata, Rimkus knew were unreasonably restrictive.  This court concluded that Cammarata's counterclaim was compulsory because it arose out of the same transaction or occurrence that was the subject matter of Rimkus's claim.  *See* FED. R. CIV. P. 13(a). Because Cammarata did not assert his counterclaim when he filed his answer to Rimkus's complaint,

and did not seek leave of court before filing the counterclaim, this court granted Rimkus's motion to strike.  Cammarata moved under Rule 59(e) for reconsideration of that decision.

A Rule 59(e) motion "calls into question the correctness of a judgment."  *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).  "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  Relief is also appropriate when there has been an intervening change in the controlling law.  *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly.  *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT *et al*, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995).  Because granting a Rule 59(e) motion is such an extraordinary remedy, the Fifth Circuit has stated that the Rule 59(e) standard "favors denial of motions to alter or amend a judgment."  *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

Cammarata argues that this court should reconsider its decision to strike the counterclaim because the counterclaim will not unfairly prejudice Rimkus.  Cammarata points out that when the counterclaim was filed in April 2008, the discovery deadline was September 3, 2008 and trial was scheduled for November 21, 2008.  Cammarata also argues that although this court "deemed [his] counterclaim compulsory, the actual ability to assert the claim . . . was not available until this Court issued its August 13, 2008 Memorandum and Opinion."  (Docket Entry No. 162, at 9).  According

11

to Cammarata, his cause of action against Rimkus for attorney's fees arose when this court concluded that the geographic restrictions of the noncompetition provisions were broader than necessary to protect Rimkus's interests.

This argument for reconsideration is unpersuasive. Cammarata's ability to assert his counterclaim was not contingent on this court finding that the noncompetition agreement was overbroad under Texas law. The governing statute, § 15.51(c), permits an award of "reasonable attorney's fees . . . incurred in defending the action to enforce the covenant" if the promisor "establishes" that the party seeking enforcement of noncompetition and nonsolicitation covenants knew at the time the agreement was executed that it contained unreasonable restrictions as to the time, geographical area, and scope of activity to be restrained. That statute allowed Cammarata to assert his counterclaim and did not require this court's ruling on the reasonableness of the restrictions in Cammarata's employment agreement. Cammarata has failed to present new evidence or error of law that would warrant the "extraordinary relief associated with the granting of a motion for reconsideration" under Rule 59. *Templet*, 367 F.3d at 479-80. Cammarata's motion for reconsideration is denied.

### B.    The Motion for Leave to File a Counterclaim

Rule 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." FED. R. CIV. P. 13(f). "The standards for determining whether leave should be granted under Rule 13(f) to allege an omitted counterclaim are similar to those under Rule 15(a)." *Inline Corp. v. Tricon Restaurants Int'l*, 2002 WL 1331885, at *1 (N.D. Tex. June 14, 2002) (citing 6 CHARLES A. WRIGHT *et al*, FEDERAL PRACTICE AND PROCEDURE § 1479 at 573-74

12

(2d ed. 1990) ("[S]everal courts have ruled that the same liberal standards that apply when leave to amend is requested under Rule 15(a) should govern when leave to add an omitted counterclaim is requested under Rule 13(f).  Thus, little seems to turn on whether the amendment is made under Rule 13(f) or Rule 15(a) because using the latter provision's permissive approach would permit the counterclaim to be added in almost every case under Rule 13(f).")).

Rule 15(a) instructs that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a).  This language "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)) (internal quotations omitted).  Although a court "should freely give leave when justice so requires" under Rule 15(a), leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F.Supp.2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).  The decision "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992).  A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "whether there has been 'undue delay, bad faith or dilatory motive . . ., undue prejudice to the opposing party, and futility of amendment.'" *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996)).

Cammarata asserts that the delay in filing his counterclaim for attorney's fees under §15.51(c) "was nothing more than oversight and inadvertence, owing in large part to. . .counsel's unfamiliarity with the nuances of Texas' statutory provisions relating to non-competition covenants."  (Docket Entry No. 162, at 10).  He argues that "justice requires" that this court grant

him leave to assert the counterclaim.  Cammarata notes that since this court's ruling granting Rimkus's motion to strike, the deadlines in this case have been extended and Rimkus will not be unfairly prejudiced if the counterclaim is allowed because it will have ample time to conduct any additional discovery needed to respond to the counterclaim.

Rimkus argues that Cammarata's ignorance of the law is no excuse for the delay.  According to Rimkus, there are no nuances to Texas's statutes on covenants not to compete that would have prevented Cammarata from asserting his counterclaim when he filed his answer to the original complaint.  Citing several cases denying motions for leave to amend, Rimkus argues that Cammarata's oversight of the § 15.51(c) attorney's fees provision is inexcusable. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140-41 (5th Cir. 1993) (affirming the denial of leave to amend where the plaintiffs knew of the facts underlying the proposed amendment before the lawsuit was filed); *Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) ("Even though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters . . . which could not have been raised initially."); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980) (upholding denial of leave to amend, although bad faith and dilatory motive were not found, because "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint"); *Agar Corp. v. Multi-Fluids*, *Inc.*, 1998 WL 425474, at *3 (S.D. Tex. Apr. 17, 1998) (denying leave to amend because the facts relevant to the defendant's proposed counterclaim were known at the time the defendant filed its answer).  Rimkus argues that if Cammarata is granted leave to file his counterclaim, Rimkus will have to conduct additional discovery into its own knowledge of the scope of the noncompetition restrictions.  Rimkus also

14

contends that granting leave would be futile because none of the testimony given by Rimkus officers at the preliminary injunction hearing showed their knowledge that the noncompetition or solicitation covenant was broader than necessary.

Rimkus's reliance on *Wimm*, *Barrett*, *Layfield*, and *Agar* is misplaced. In these cases, the courts denied leave to amend because the party opposing amendment would have been significantly prejudiced. In *Barrett*, the party seeking leave to amend sought to add new parties and claims late in the case. *See* 625 F.2d at 75 (affirming denial of leave to amend, although bad faith and dilatory motive were not found, because the proposed "amendment sought to add several new parties and additional counts"). In *Wimm* and *Layfield*, the party seeking leave did so only after summary judgment motions had been filed. *See Wimm*, 3 F.3d at 139 ("The motion is obviously interposed by plaintiffs in an attempt to avoid summary judgment."); *Layfield*, 607 F.2d at 1098 (leave was sought after the defendant moved for summary judgment). In *Agar*, the motion for leave to amend was filed "at the end of the discovery period," nine months after the deadline for amended pleadings had expired, "with the trial date approaching." 1998 WL 425474, at *3.

In the present case, the motion was not filed after, and to try to defeat, a pending motion for summary judgment. Cammarata does not seek to add new parties. Although Cammarata's excuse for the delay is "less than compelling," adding the counterclaim will not substantially delay the suit because it involves the same transaction or occurrence as the claims at issue. *See Gabourel v. Bouchard Transp. Co., Inc.*, 901 F. Supp. 142, 145 (S.D.N.Y. 1995) (granting leave to amend because the "lawsuit [was] only one and a one-half years old and the amended pleading [would] not substantially delay the suit, as it involve[d] the same transaction or occurrence at issue in the claims already presented"). The fact that Cammarata's counterclaim is compulsory also weighs in favor

15

of granting leave.  *See* 6 CHARLES A. WRIGHT *et al*, FEDERAL PRACTICE AND PROCEDURE § 1430
(2d ed. 1990) ("[W]hen the omitted counterclaim is compulsory, the reasons for allowing its
introduction by amendment become even more persuasive, since an omitted compulsory
counterclaim cannot be asserted in subsequent cases (at least in the federal courts) and the pleader
will lose the opportunity to have the claim adjudicated.").  The discovery deadline is currently
scheduled for May 22, 2009 and docket call is scheduled for August 28, 2009.  (Docket Entry No.
217).  Rimkus has several months to conduct any additional discovery required to defend against
Cammarata's counterclaim.  And Rimkus has been aware of and has been defending against an
identical counterclaim in the case styled *Rimkus Consulting Group*, *Inc. v. Gary Bell*, Civ. A. No.
H-07-910, which was consolidated with this case on December 12, 2008.  Moreover, the additional
issue Rimkus has identified involves what its own officers and agents knew, which is unlikely to
require extensive discovery from third parties.  Rimkus will not be unduly prejudiced by granting
Cammarata's motion for leave to amend his answer to assert a counterclaim under § 15.51(c).  *Cf.
McLemore v. Landry*, 898 F.2d 996, 1003 (5th Cir. 1990) (motion for leave to file compulsory
counterclaim was untimely because it was filed six months after the party moved for summary
judgment, more than five months after the opposing party moved for summary judgment, six weeks
after the court's ruling on these motions, and almost three years after the suit was first filed);
*Technographics*, *Inc. v. Mercer Corp.*, 142 F.R.D. 429, 431 (M.D. Pa. 1992) (the defendant was not
permitted to amend its answer to add a compulsory counterclaim because it was based on facts
known to the defendant since the litigation began more than three years earlier, the plaintiff would
have been significantly prejudiced by the counterclaim, and adding the counterclaim would have
required additional discovery and delayed the trial).  The fact that Rimkus officers have not

16

previously testified that they knew the restrictions in the noncompetition covenant were broader in scope than necessary does not make Cammarata's counterclaim futile.

Cammarata's motion for leave to amend his answer to assert a counterclaim under TEX. BUS. & COM. CODE § 15.51(c) is granted.

## III.   Cammarata's Third Motion to Dismiss Based on *Res Judicata*

On September 17, 2008, Cammarata filed his third motion to dismiss Rimkus's claims for breach of the noncompetition and nonsolicitation covenants as barred by *res judicata*. (Docket Entry No. 169). Cammarata argues that the preclusive effect of the Louisiana court's judgment outside the State of Louisiana must be decided because although this court determined that Rimkus was not entitled to injunctive relief, Rimkus is seeking damages for Cammarata's competitive activities outside Louisiana. Cammarata contends that because the elements of *res judicata* under Louisiana law are met, "the issue of what law should apply in this case, as well as the determination of the validity of the non-competition and non-solicitation provisions of Mr. Cammarata's 1996 Employment Contract are barred by *res judicata* and must be dismissed." (Docket Entry No. 71 at 6).

Rimkus responds that the preclusive effect of the Louisiana state-court judgment "is limited to the enforceability under Louisiana law of Cammarata's promises not to compete with Rimkus and not to solicit Rimkus customers." Rimkus argues that in the Louisiana court, "[t]here was no decision as to Rimkus's claims that Cammarata has breached and continues to breach those promises pursuant to Texas law." (Docket Entry No. 78 at 1). Rimkus contends that the Louisiana court "was asked solely to declare whether the noncompete provisions were unenforceable under Louisiana law." (Docket Entry No. 80 at 3–4). Rimkus argues that the Louisiana state court's choice-of-law

17

decision was "based on a special Louisiana statute making choice-of-law provisions invalid under special circumstances."  (Docket Entry No. 113 at 6).  Rimkus contends that the Louisiana state court did not decide the issue before this court—whether the choice-of-law provision in the parties' Employment Agreement is valid under Texas choice-of-law principles.  Rimkus argues that because Louisiana and Texas apply different legal standards to the choice-of-law analysis, the legal issues presented in this case are not the same as the issues decided by the Louisiana state court, making *res judicata* inapplicable.

The Full Faith and Credit Clause of the United States Constitution and its implementing statute, 28 U.S.C. § 1738, governs the preclusive effect of a state-court judgment in a subsequent federal action.[4]  Final judgments of state courts "have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  *Id.*  Under Full Faith and Credit, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.

---

[4]The Full Faith and Credit Clause states:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. CONST. art IV, § 1.

Title 28 U.S.C. § 1738 states in relevant part:

> The records and judicial proceedings of any court of any . . . State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have now by law or usage in the courts of such State, Territory or Possession from which they are taken.

For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." *Baker v. General Motors Corp.*, 522 U.S. 222, 233 (1998) (footnote and citations omitted).

A federal court applies the rendering state's preclusion law to determine whether to accord a state court's final judgment preclusive effect. 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Norris v. Hearst Trust*, 500 F.3d 454, 460–61 (5th Cir. 2007). This rule applies even if the rendering state's judgment is based on public policy offensive to the enforcing state. *Baker*, 522 U.S. at 233–34. Because enforcing states decide the scope of a judgment, a rendering state can "determine the extraterritorial effect of its judgement . . . only . . . indirectly by prescribing the effect of its judgments within the State." *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 270, (1980). "To vest the power of determining the extraterritorial effect of a State's own . . . judgments in the State itself risks the very kind of parochial entrenchment on the interests of other States that it was the purpose of the Full Faith and Credit Clause and other provisions of Art. IV of the Constitution to prevent." *Id.* at 272.

Under Louisiana law, "[t]he doctrine of res judicata precludes subsequent litigation when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties in the two matters are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Smith v. State*, 899 So.2d 516, 529–30 (La. 2005). A final judgment is "conclusive, in any subsequent action between [the plaintiff and defendant], with respect to any issue actually litigated and determined if its determination was essential to that judgment." LA. REV. STAT. §

19

13:4231 (2006).  Louisiana courts emphasize that the issue in the rendering court and the later court must be identical.  *See, e.g.*, *Anaya v. Legg Mason Wood Walker, Inc.*, 985 So.2d 281, 287 (La. Ct. App. May 14, 2008) ("[O]nce a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation *of the same issue* in a different cause of action between the same parties." (emphasis added, quoting *Segal v. Smith, Jones & Fawer, L.L. P.*, 838 So.2d 62, 65 (La. Ct. App. 2003))); *Am. Nat'l Gen. Ins. Co. v. Howard*, 981 So.2d 863, 865 (La. Ct. App. 2008) ("[T]he Court should assess whether the suits involve the same parties, in the same capacities, addressing the same issues, and with the same object.").

The primary dispute affecting the Full Faith and Credit and preclusion analysis in this case is whether the issues decided by the Louisiana court are the same as the issues before this court, such that the Louisiana judgment precludes further litigation of those issues in this court.  Citing several federal cases holding that "a court's ruling on a 'choice-of-law' issue should be afforded *res judicata* effect in any other proceeding between the same parties attempting to relitigate that issue," Cammarata argues that the choice-of-law issue "was fully litigated" in the Louisiana state court, which held that the Texas choice-of-law provision in the Employment Agreement was unenforceable under Louisiana law.  (Docket Entry No. 104 at 1).  Rimkus argues that the Louisiana court decided only that Louisiana law applied in Louisiana because under Louisiana law, the Texas choice-of-law provision was invalid.  Rimkus contends that the Louisiana  court considered only whether the contractual choice-of-law provision and the noncompetition and nonsolicitation covenants were enforceable in Louisiana, under Louisiana law, and that *res judicata* does not preclude this court from considering whether the parties' choice of Texas law is enforceable in this Texas forum and whether under Texas law, the noncompetition and nonsolicitation provisions are enforceable.

This court previously concluded that "the Louisiana state court's judgment clearly precludes relitigation of the issue of whether the forum-selection and choice-of-law provision, as well as the noncompetition and nonsolicitation covenants, are unenforceable in Louisiana, under Louisiana law." (Docket Entry No. 159, Memorandum and Opinion at 24).  This court declined to decide, however, "whether the Louisiana state court's judgment precludes this Texas court from considering whether Texas choice-of-law rules apply and the enforceability of the contractual choice-of-law provision and the covenants under Texas law." (*Id.*).  As explained below, the issues decided by the Louisiana court in *Bell* are not the same issues presented to this court.  As a result, the *Bell* court's determinations that Louisiana law applies and that the noncompetition and nonsolicitation contract provisions are invalid under Louisiana law are not *res judicata* as to the claims that Cammarata breached the contractual restrictions on his postemployment competition outside the State of Louisiana.

### A.     The Louisiana Court's Choice-of-Law Determination

The *Bell* court decided that, under Louisiana choice-of-law rules, Louisiana law applied despite the parties' choice of Texas law in the Employment Agreement.  Under Louisiana law, *res judicata* prevents the relitigation of identical issues in a subsequent case.  "Courts have readily perceived that for purposes of preclusion, '[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.'  In many cases the differences in the legal standards are apparent and easily defeat claims of preclusion, particularly when . . . different choice-of-law standards apply."  18 CHARLES A. WRIGHT *et al*, FEDERAL PRACTICE & PROCEDURE § 4417 (2d ed. 2002) (internal footnotes omitted).  A determination made by a Louisiana court applying Louisiana choice-of-law standards that the

contractual provision designating Texas law is invalid does not have *res judicata* effect on a claim that the contractual provision is valid under Texas choice-of-law standards.  *See Maryland Cas. Co. v. W.R. Grace & Co. Conn.*, 1991 WL 230616, at *2 n.4 (S.D.N.Y. Oct. 24, 1991) ("A substantive determination made under the choice-of-law rules of a non-New Jersey jurisdiction does not estop a party with respect to a substantive determination to be made under New Jersey choice-of-law rules."); *see also Feniello v. University of Pennsylvania Hospital*, 558 F.Supp. 1365, 1367 (D.N.J. 1983) (finding that a previous determination of the substantive law that applied under Pennsylvania choice-of-law rules did not have a preclusive effect on the determination of the applicable substantive law under New Jersey choice-of-law rules).

The Louisiana state court did not determine whether, under Texas choice-of-law rules,  the Texas choice-of-law provision, the noncompetition provision, or the nonsolicitation provision, were valid.  This case is the first one in which the court must decide what substantive law to apply under Texas choice-of-law rules.[5]  Accordingly, *res judicata* does not apply to the Louisiana state court's choice-of-law determination.

The cases Cammarata cited in arguing that the *Bell* court's choice-of-law determination is *res judicata* in this court are distinguishable.  In *Quintero v. Klaveness Ship Lines*, 914 F.2d 717 (5th Cir. 1990), *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003), and *SIL-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507 (10th Cir. 1990), the same choice-of-law rules applied in both courts. *Quintero* and *Vasquez* involved the relitigation exception to the Anti-Injunction Act, which permits

---

[5]  In diversity cases, federal district courts apply the choice-of-law rules of the forum state.  *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 306 (5th Cir. 2006) (citing *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004)).

a federal district court that has determined the applicable law to enjoin a subsequent determination on the choice-of-law issue by a state court. *See* 28 U.S.C. § 2283; *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). The relitigation exception, which is concerned with preventing costly and wasteful redetermination of issues in state court, was appropriate in those cases because the state and federal courts were located within the same forum and the same choice-of-law rules would apply in any subsequent determination by the state court. In *SIL-Flo*, the court recognized that a prior choice-of-law determination by one federal district court was *res judicata* in a subsequent case in another federal district court. 917 F.2d at 1521. But both lawsuits in that case were brought in the same federal district, and both courts were bound to apply the same choice-of-law rules. *Id.* at 1509. Similarly, in *Weston Funding Corp. v. Lafayette Towers*, *Inc.*, 550 F.2d 710 (2d Cir. 1977)*,* the choice-of-law rules in the second forum did not differ from the rendering state's choice-of-law rules and, if applicable, would have resulted in applying the same substantive law. *Id.* at 715 ("Under [New York's] test, there is little doubt that New Jersey law would govern a dispute arising from this agreement."). By contrast, in this case the rendering court and enforcing court are located in different states that have different choice-of-law rules.

In *Guild Wineries & Distilleries v. Whitehall Co.*, *Ltd.*, 853 F.2d 755 (9th Cir. 1988), and *Legg v. KLLM*, *Inc.*, 2005 WL 3051016 (S.D. W.Va. Nov. 15, 2005), the courts held that a prior choice-of-law determination was *res judicata* under the rendering state's preclusion law. In *Guild Wineries*, the court held that a California federal district court was required to give a Massachusetts agency's choice-of-law determination preclusive effect. 853 F.2d at 762. The prior decision was *res judicata* because it would be given preclusive effect in Massachusetts, the rendering state, under Massachusetts law. *Id.* at 761. Similarly, in *Legg*, the prior decision was *res judicata* because it

would be given preclusive effect in Indiana, the rendering state, under Indiana law.  2005 WL 3051016, at *3.  Here, the *Bell* court's decision on the enforceability of the noncompetition and nonsolicitation covenants would not be entitled to *res judicata* effect under Louisiana preclusion law because the issues in the rendering court and the enforcing court are not the same.[6]

The Louisiana court's judgment does not preclude this court from deciding, under Texas choice-of-law rules, whether the Texas choice-of-law provision in the Employment Agreement is enforceable and that Texas law applies to the noncompetition and nonsolicitation provisions.

### B.     The Louisiana Court's Determination that the Noncompetition and Nonsolicitation Covenants are Unenforceable

The *Bell* court decided that the noncompetition and nonsolicitation covenants in the Employment Agreement are unenforceable under Louisiana law.  As with the choice-of-law determination, the issues decided by the Louisiana court and the issues presented in this court with respect to the enforceability of the covenants are not the same.  Under Texas choice-of-law rules, "the parties' contractual choice of [Texas] law is enforceable."  (Docket Entry No. 159, Memorandum and Opinion, at 29–30).  The validity and enforceability of the noncompetition and nonsolicitation covenants was, and is, properly determined in this court under Texas law.  The Louisiana state court did not examine the noncompetition and nonsolicitation covenants under Texas law.  This case is the first in which the court was asked to decide whether the noncompetition and nonsolicitation covenants in the Employment Agreement are valid and enforceable under Texas law.

The Louisiana court's determination that in Louisiana, the contractual forum-selection,

---

[6] Moreover, the *Legg* court's conclusion on the prior choice-of-law determination was dicta, unnecessary to the court's decision.  *See Legg*, 2005 WL 3051016, at *3 ("[A]ny choice of law argument by Plaintiff was waived when she failed to assert it at the declaratory judgment action in Indiana.").

choice-of-law, noncompetition, and nonsolicitation provisions are unenforceable under Louisiana law because they offend Louisiana public policy is entitled to preclusive effect in this court. But the Louisiana court's judgment does not preclude this court from considering the enforceability of the noncompetition and nonsolicitation covenants under Texas law for Cammarata's competitive activities outside Louisiana that allegedly breached these covenants. (Docket Entry No. 159, Memorandum and Opinion, at 29–30). The Louisiana court's ruling that Louisiana law applies despite the choice of Texas law in the Employment Agreement does not invalidate the choice-of-law, noncompetition, and nonsolicitation provisions in all states.

In *Comshare Inc. v. Execucom Systems Corp.*, 593 F.Supp. 981 (E.D. Mich. 1984), the court concluded that one state's public policy against noncompetition contracts cannot invalidate a noncompete outside of that state's borders if the parties' contract designated another state's law as controlling. In that case, Patricia Palmer, a Michigan resident, entered into an employment contract with Execucom, a Texas corporation, in 1979. The contract included a three-year noncompetition clause and a Texas choice-of-law provision. In 1984, Palmer resigned from Execucom and began working for one of its direct competitors, Comshare. Palmer and Comshare sued, seeking an injunction against enforcement of the noncompetition agreement and a declaration that it violated Michigan law, under which noncompetition contracts were unenforceable. They argued that Michigan law prevented enforcement of the noncompetition agreement throughout the United States because Palmer lived in Michigan and had worked for Execucom in Michigan. The court rejected the plaintiffs' argument, reasoning that the relief they sought "would give extraterritorial effect to a Michigan statute, and prevent Execucom from obtaining the benefit of its contract in states which might have no such prohibition against such a contract." *Id.* at 986. The court analyzed the choice-

of-law question under the "interest analysis" set forth in the *Restatement of Conflicts*.  The court concluded:

> Michigan has a greater interest in the application of its laws to the issue of enforceability of the contract, but only with respect to competition which occurs between Execucom and Comshare in Michigan. . . . [T]he parties' express choice should not be overruled by Michigan's tenuous interest, if any, in the extra-territorial application of its policy against contracts not to compete.

*Id.* at 989.  The court concluded that "except with respect to enforcement of the contract in this state . . . the law of Texas applies to the enforceability of the contract."  *Id.*

In the present case, the Louisiana court decided that Louisiana law applied despite the Texas choice-of-law provision in the Employment Agreement because "[a]pplication of Texas law to this dispute would thwart Louisiana's longstanding public policy and interest" in "prohibit[ing] or severely restrict[ing] non-competition provisions in employment agreements which curtail an employee's right to earn his livelihood."  *Bell*, 983 So.2d at 932–33.  Cammarata argues that the Louisiana court did not expressly limit its decision to activities "in Louisiana," and that the court's judgment – that Louisiana law applies and that the noncompetition and nonsolicitation covenants are unenforceable under Louisiana law – should apply with equal force in all states.  But if this court were constrained by *res judicata* from considering the validity and enforceability of the noncompetition and nonsolicitation provisions under the Texas law the parties chose, it would "give extraterritorial effect to a [Louisiana] statute, and prevent [Rimkus] from obtaining the benefit of its contract in states which might have no such prohibition against such a contract."  The preclusive effect of the *Bell* court's decision that the noncompetition and nonsolicitation covenants are unenforceable under Louisiana law is limited to Cammarata's competitive activities inside Louisiana.  The Louisiana court's decision does not require the dismissal of Rimkus's claim that

26

Cammarata's postemployment competitive activities in Texas, Mississippi, Florida, and other states breached his Employment Agreement.  The motion to dismiss has been granted insofar as Rimkus seeks damages for Cammarata's postemployment competitive activities inside Louisiana on the basis that those activities breached his Employment Agreement.  The motion to dismiss Rimkus's claims for breach of the noncompetition and nonsolicitation covenants for activities outside Louisiana is denied.

## IV.    Conclusion

Cammarata's motion for reconsideration is denied.  The motion for leave to amend to assert a counterclaim is granted.  Cammarata's motion to dismiss based on *res judicata* is denied as to Rimkus's claims that his postemployment competitive activities outside Louisiana violated the contractual noncompetition and nonsolicitation covenants.

SIGNED on March 24, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge