### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RIMKUS CONSULTING GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-0405 |
| | § | |
| NICKIE G. CAMMARATA, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Rimkus Consulting Group, Inc. ("Rimkus") sued its former employee, Nickie G. Cammarata, after he left and began working for a company he formed with other ex-Rimkus employees. Both Rimkus and this new company, U.S. Forensic, LLC, provide investigative and forensic engineering services, primarily for use in insurance disputes and litigation involving accidental or unexpected damage to people or property. In a separate lawsuit, Rimkus sued another former employee, Gary Bell, who also left to work for U.S. Forensic. Rimkus alleged that Cammarata and Bell breached noncompetition and nonsolicitation covenants in their written employment agreements with Rimkus and that they used Rimkus's trade secrets and proprietary information to compete with Rimkus. U.S. Forensic is a defendant in the *Cammarata* case. Both cases are now pending in this court.

Rimkus has moved for leave to amend its complaint in both cases, (Docket Entry Nos. 254, 266), and the defendants have responded, (Docket 265). Rimkus has also moved for leave to designate experts past the deadline for doing so, (Docket Entry No. 264), and the

defendants responded, (Docket Entry No. 282).  Based on a careful review of the motions and responses, the record, and the applicable law, this court grants Rimkus's motions for leave to amend and denies its motion for leave to designate expert witnesses.  The reasons for these rulings are explained below.

## I.    Background

The relevant background is detailed in previous memoranda and opinions and is only summarized here.  Briefly, Rimkus is a forensic engineering contractor based in Houston, Texas.  Cammarata and Bell worked in Rimkus's New Orleans office.  After resigning from Rimkus, Cammarata and Bell immediately began to work for U.S. Forensic, which they founded.  Like Rimkus, U.S. Forensic provides investigative and forensic services, primarily to determine the cause, origin, and extent of losses from failures and accidents.  U.S. Forensic competes with Rimkus in providing investigative and forensic engineering services, although U.S. Forensic does not offer as broad a range of services and operates in fewer states.  Most of U.S. Forensic's clients are in Louisiana and most of the company's work is performed in that state.  Cammarata and U.S. Forensic are defendants in *Cammarata*; U.S. Forensic was dismissed from *Bell*.

Before Rimkus filed these two suits, Cammarata and Bell had sued Rimkus in Louisiana, seeking a declaratory judgment that the noncompetition and nonsolicitation provisions in their employment agreements were invalid.  The employment agreements specified that Texas law applied.  Cammarata and Bell lived in Louisiana.  Under Louisiana law, noncompetition and nonsolicitation covenants, and forum-selection and choice-of-law

clauses in employment agreements are generally unenforceable.  On July 26, 2007, the Louisiana state court granted Cammarata and Bell's motion for partial summary judgment, concluding that Louisiana law rather than Texas law applied to their employment agreements and "that, pursuant to Louisiana law, the covenant not to compete clauses contained in Paragraphs 8(a) and the non-solicitation of customer(s) clauses contained in Paragraphs 8(c) of the respective contracts are invalid and unenforceable."  (Docket Entry No. 71, Ex. H).

In this federal suit, Cammarata filed three motions to dismiss Rimkus's claims for breach of the noncompetition and nonsolicitation provisions in the employment agreement. Cammarata based his motions to dismiss on the preclusive effect of the Louisiana state court ruling that the noncompetition, nonsolicitation, forum selection, and choice-of-law provisions in the employment agreement were invalid.  (Docket Entry Nos. 71, 105, 169).

After a three-day hearing on Rimkus's preliminary injunction application, this court concluded that Rimkus was not entitled to injunctive relief against Cammarata.  (Docket Entry No. 159).  With respect to Cammarata's motions to dismiss based on preclusion, this court concluded that "the Louisiana state court's judgment clearly precludes relitigation of the issue of whether the forum-selection and choice-of-law provision, as well as the noncompetition and nonsolicitation covenants, are unenforceable in Louisiana, under Louisiana law."  (*Id.*).  Cammarata's motions to dismiss were granted "insofar as Rimkus seeks damages for Cammarata's postemployment competitive activities inside Louisiana on the basis that those activities breached his Employment Agreement."  (Docket Entry No. 260).  The motions to dismiss were denied with respect to Cammarata's activities outside

Louisiana.  (*Id.*).  This court held that the Louisiana state court's rulings that under Louisiana law, the choice-of-law, noncompetition, and nonsolicitation contract provisions were invalid did not make those provisions invalid in all states.  (*Id.*).

The suit against Bell, *Rimkus Consulting Group*, *Inc. v. Gary Bell*, Civ. A. No. H-07-910, was consolidated with this suit on December 12, 2008.  (Docket Entry No. 211).  The amended scheduling order, entered on December 19, 2008, set an April 3, 2009 deadline for Rimkus to designate expert witnesses and provide the required report.  (Docket Entry No. 217).  The parties conducted vigorous discovery.  The amended scheduling order set a discovery cut-off date of May 22, 2009 and a docket call date of August 28, 2009.  (*Id.*).

## II.    The Motion for Leave to Amend

Rimkus seeks leave to amend its complaint to include causes of action for trademark violation.  Rimkus asserts that it learned during a recent deposition that Gary Bell "set up a website 'RIMKUSCONSULTINGGROUP.COM' which was redirected to U.S. Forensic's website." (Docket Entry No. 254).  Rimkus asserts that it has "trademark protection" for the name "Rimkus Consulting Group."  (*Id.*).  Rimkus argues that leave to amend should be granted because establishing an allegedly infringing website and using it to direct people to the U.S. Forensic website is related to the claims in this lawsuit.  Rimkus asserts that the defendants will not be unfairly prejudiced because they only recently disclosed these "further wrongful acts."  (*Id.*).  The defendants respond that leave should be denied because the proposed new claims are not relevant to the breach of contract and misappropriation of confidential information claims that are the basis of the litigation.  The defendants contend

4

that adding the trademark claims will confuse the issues and lead to "abusive and repetitive discovery," and that the better course is for Rimkus to file a separate lawsuit pursuing relief on these claims.   (Docket Entry No. 265).

Under Rule 15(a) of the Federal Rules of Civil Procedure, after a responsive pleading is served, a party may amend only "with the opposing party's written consent or the court's leave."   Rule 15(a) instructs that "[t]he court should freely give leave when justice so requires," a standard that "evinces a bias in favor of granting leave to amend," *Jones v. Robinson Prop. Group*, *L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines*, *Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)) (internal quotations omitted), but leave to amend "is not automatic," *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F.Supp.2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).   The decision "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992).   A district court reviewing a motion to amend pleadings under Rule 15(a) may consider such factors as "whether there has been 'undue delay, bad faith or dilatory motive . . . , undue prejudice to the opposing party, and futility of amendment.'" *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996)).

The record provides no basis to find undue delay, bad faith, or a dilatory motive in the timing of Rimkus's motion for leave to amend.   Rimkus did not learn the facts giving rise to the trademark claims until it deposed Gary Bell and the corporate representative of U.S. Forensic on March 7 and 8, 2009.   Rimkus was not dilatory in filing the motion after learning

5

the information; the motion was filed on March 16, 2009. Nor is there any claim that the proposed amendment would be futile.

The defendants will not be unduly prejudiced by allowing Rimkus to add the trademark causes of action. Rimkus has already obtained significant discovery on these new claims through the depositions of Bell and U.S. Forensic and is unlikely to require more discovery on the proposed additional claims. Neither the discovery deadline nor the dispositive motions deadline has passed. *Cf. Keene v. Sears Roebuck & Co.*, *Inc.*, 2007 WL 77324, at *7 (D. N.J. Jan. 8, 2007) (denying leave to amend because "if Plaintiff were allowed to amend his complaint at this late stage in the litigation, not only would significant additional discovery be required . . . , but also Defendants would be disadvantaged by losing the opportunity for dispositive motion practice based on Plaintiff's additional claim").

The fact that a case has been pending for a long time does not preclude a late-filed pleading amendment. *See*, *e.g.*, *Security Ins. Co. of Hartford v. Kevin Tucker & Assoc.*, *Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995) (holding that the district court abused its discretion in denying leave to amend a complaint when the opposing party made no showing of prejudice from the delay); *Buder v. Merrill Lynch*, *Pierce*, *Fenner & Smith*, *Inc.*, 644 F.2d 690, 694 (8th Cir. 1981) (holding that the district court abused its discretion in denying leave to amend the complaint to add a new count when no prejudice resulted from two and one-half year delay and the facts underlying the new and old counts were similar). The length of a litigation is relevant insofar as it suggests bad faith on the part of the moving party or potential prejudice to the nonmoving party should an amendment be allowed. *See* 6

6

CHARLES ALAN WRIGHT, *et al.*, § 1487 (2d ed. 1990).

Rimkus's claims in this lawsuit are for, among other things, breach of noncompetition and nonsolicitation covenants in its former employees' employment agreements.  Rimkus proposes to add a claim that Bell and U.S. Forensic established a website using Rimkus's trade name that directed unwitting users to the U.S. Forensic website.  It is undisputed that U.S. Forensic competes with Rimkus in providing investigative and forensic engineering services.  The trademark claims are sufficiently related to the pending claims against the defendants as to make it efficient to try them in the same case.  *Compare Bleiler v. Cristwood Contracting Co.*, *Inc.*, 868 F.Supp. 461, 463 (D. Conn. 1994), *rev'd on other grounds*, 72 F.3d 13, 19 (2d Cir. 1995) ("Permitting a proposed amendment also may be prejudicial if discovery already has been completed, but this concern may be alleviated if the new claim arises from a similar set of operative facts and a similar time as the existing claims."); *with American Society for the Prevention of Cruelty to Animals v. Ringling Brothers and Barnum & Bailey Circus*, 244 F.R.D. 49, 51 (D. D.C. 2007) (the court may "deny leave to amend where the non-moving party would be put to the additional expense and burden of a more lengthy and complicated trial or where the issues raised by the amendment are remote to the issues in the case").

Rimkus's motions for leave to amend its complaints, (Docket Entry Nos. 254, 266), are granted.

## III.    The Motion for Leave to Designate Expert Witnesses

Rimkus seeks leave to designate an expert on the operation of a forensic engineering

7

business and an expert on economic profit and loss.  Rimkus argues that as a result of recent discovery and depositions, "the necessity of retaining experts has only now become clear." (Docket Entry No. 264).  Rimkus asserts that expert testimony by a forensic engineering expert is required because "[t]here are peculiarities about [a forensic engineering] business that are not germane to the simple operation of other forms of business."  (*Id.*).  Rimkus asserts that this testimony is needed to allow the jury to understand whether Cammarata and Bell could have started U.S. Forensic and attained the success they have achieved without using Rimkus's confidential information and soliciting former Rimkus clients.  Rimkus also argues that expert testimony is needed on "how much money Rimkus lost" and "how much Defendants gained" as a result of the alleged breaches of the noncompetition, nonsolicitation, and nondisclosure covenants.  Rimkus asserts that the damages evidence will include "complex accounting data and concepts and testimony that require specialized knowledge to comprehend."  (*Id.*).  Rimkus asserts that granting leave to designate these experts out of time will not materially delay the trial because they can produce reports by June 1, 2009, leaving sufficient time to conduct discovery, if a short continuance is granted, without disturbing the docket call date.

The defendants argue that expert testimony on these issues is unnecessary and that Rimkus has failed to specify what information was recently learned during discovery that made the need for a forensic- engineering-business expert or an economic-profit-and-loss expert apparent at this late stage of the litigation.  The defendants also argue that granting leave to designate experts at this time would likely mean that rebuttal experts would also

need to be designated, materially adding to the delay and cost.

A district court has "wide latitude" in pretrial matters to issue orders based on "intelligent flexibility." *See Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998) (quoting *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971)).  The Fifth Circuit has instructed district courts to "consider four factors in determining whether the testimony of a late-designated expert witness should be permitted: (1) the importance of the witness's testimony; (2) the prejudice to the opposing party if the witness is allowed to testify; (3) the possibility that a continuance would cure potential prejudice; and (4) the explanation given for the failure to identify the witness." *Id*. at 1000 (citation omitted); *see also Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) (citation omitted).

The Fifth Circuit has taken two separate approaches to determining the importance of a late-designated expert's testimony.  *See Soliz v. Assocs. in Med., P.A.*, No. H-06-2785, 2007 WL 2141392, at *2 (S.D. Tex. July 25, 2007).  Under one approach, the more important the proposed expert witness, the more important was the need to designate that witness timely.  *Id.* (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791–92 (5th Cir. 1990)).  Under the alternative approach, the more important the witness, the more latitude the district court should give a party to designate after the deadline.  *See id.* (citing *Betzel v. State Farm Lloyd's*, 480 F.3d 704, 707–08 (5th Cir. 2007)).  Under either approach, the importance of the testimony cannot override the other factors relevant to deciding whether to permit late designation.  *Id.* (citing *Betzel*, 480 F.3d at 708).

9

Rimkus asserts that an expert is needed to explain the "peculiarities" of a forensic-engineering business and to explain its damages to the jury. Rimkus has not explained, however, why it would be necessary to retain an expert to present testimony about the nature of its business and how it operates. Nor has Rimkus explained why it would be necessary to have an expert explain the damages it seeks in this case. Rule 701 of the Federal Rules of Evidence permits lay witnesses to offer opinion testimony when it is "based on personal perception," is an opinion "that a normal person would form from those perceptions," and would be "helpful to the fact finder." *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002). "[A]n officer or employee of a corporation may testify to industry practices and pricing [under Rule 701] without qualifying as an expert [under Rule 702]." *Texas A&M Research Foundation v. Magna Transp.*, *Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) (citing *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003)); *see also Nat'l Hispanic Circus*, *Inc. v. Rex Trucking*, *Inc.*, 414 F.3d 546, 551-52 (5th Cir. 2005) ("Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing.").[1] Similarly, a corporate owner or officer may testify as to lost profits under Rule 701 "if the witness has direct knowledge of the business accounts underlying the profit calculation." *Miss. Chem. Corp.*, 287 F.3d at 373 (allowing corporation's director of risk

---

[1]    Although Rule 701 was amended in 2000 to prohibit lay witnesses from offering opinions based on "scientific, technical or other specialized knowledge within the scope of Rule 702 [expert evidence]," the court in *Tampa Bay Shipbuilding*, 320 F.3d at 1222-23, reviewed the Committee Note and concluded that the amendment did not place any restrictions on the preamendment practice of allowing business owners or officers to testify based on personal knowledge obtained from their position and experience.

management to testify to lost profits); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) ("[A] president of a company, such as Cook, has 'personal knowledge of his business . . . sufficient to make . . . him eligible under Rule 701 to testify as to how lost profits could be calculated.'") (internal citations and quotation marks omitted), *cert. denied*, 516 U.S. 1114, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996); *Lightning Lube*, *Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (allowing Rule 701 testimony by the owner of a corporation as to the amount of lost profits).

Even if the proposed expert testimony was important to Rimkus, which is not shown in this record, that factor cannot "*singularly* override the enforcement of local rules and scheduling orders." *See Betzel*, 480 F.3d at 707–08 (emphasis added). Rimkus has not presented adequate justification for its delay in seeking leave to designate experts long after the deadline for doing so. Rimkus asserts that it learned new facts during recent discovery that made clear the need for a forensic-engineering-business expert and an economic-profit-and-loss expert. Yet Rimkus does not explain what those facts are and has not shown what changed after the expert witness deadlines passed. From the outset, this case involved the operation of a forensic-engineering business and its alleged loss of business and profits due to the defendants' competitive activities. Early in the litigation, Rimkus was arguing that the defendants' growth and success evidenced improper competitive activities. Rimkus cannot rely on the need to provide evidentiary support for this argument as a newly discovered reason for designating an expert witness.

Moreover, the late designation in this case "would . . . disrupt[] the court's discovery

schedule and the opponent's preparation." *See Geiserman*, 893 F.2d at 791–93.  Two expert witness deadlines have passed and the defendants have relied "on Plaintiff's apparent decision to forgo expert testimony."  *Id.*  Contrary to Rimkus's arguments, the additional time required by their proposed untimely designations would not be limited to time for the defendants to depose these new experts.  Instead, the defendants would also have to be given the opportunity to locate and designate rebuttal experts and make them available to be deposed by Rimkus.  While "a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time," *see Betzel*, 480 F.3d at 708 (quotation omitted), if the testimony is important, *see Campbell*, 138 F.3d at 1001, a continuance is prejudicial if "such a remedy would have entailed additional expense to the [defendant] and further delayed its day in court."  *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991).  And a continuance does not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.  *Id.*  This case has been continued in the past; the scheduling order has been amended on three separate occasions to extend the deadlines.  Given the already prolonged nature of the case and the additional expense and delay that would be caused by allowing expert witnesses at this late date, a continuance is not appropriate to allow Rimkus to designate so late.

The relevant factors all weigh in favor of denying Rimkus's motion for leave to designate expert witnesses after the deadline.

## IV.   Conclusion

Rimkus's motions for leave to amend are granted.  The motion for leave to designate

12

expert witnesses is denied.

SIGNED on May 7, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge